# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| JANET ADAMS and RANDY ADAMS, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-870-SDJ-KPJ |
| MEDTRONIC, INC. *et al.*, | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following motions:

(1) Plaintiffs' Motion for Leave to File Late Expert Disclosures and/or to Modify Scheduling Order (the "Motion for Leave") (Dkt. 32); and

(2) Defendants' Motion for Summary Judgment (the "MSJ") (Dkt. 31).

Defendants filed a response to the Motion for Leave, and Plaintiffs filed a response to the MSJ. *See* Dkts. 33, 36. On March 3, 2021, the Court held a hearing to discuss the Motion for Leave, the MSJ, and other pending matters. *See* Dkt. 45. Having considered the arguments and applicable authorities, the Court finds the Motion for Leave (Dkt. 32) is hereby **GRANTED** and the MSJ (Dkt. 31) is hereby **DENIED AS MOOT**.

## I. BACKGROUND

On October 14, 2019, Plaintiffs Janet Adams and Randy Adams (collectively, "Plaintiffs") filed suit in the 429th Judicial District Court of Collin County, Texas. *See* Dkts. 1, 1-3. Defendants Medtronic, Inc., Covidien Holding, Inc., Covidien LP, and Covidien Sales LLC (collectively, "Defendants") removed the action to this Court. *See* Dkt. 1. On October 15, 2020, Plaintiffs filed a Second Amended Complaint (Dkt. 25), which is the live pleading in this matter.

According to the Second Amended Complaint, on December 19, 2017, Plaintiff Janet Adams ("Mrs. Adams") was transported to Baylor Medical Center in McKinney, Texas, to receive a standard "ileostomy takedown." *See* Dkt. 25 at 7. During the procedure, the operating surgeon used a device known as an EEA surgical stapler. *See id.* at 7–8. Allegedly, the EEA surgical stapler malfunctioned, resulting in a "lead point of tearing distally along the posterial rectal wall," which required "multiple procedures for drain replacements" and Mrs. Adams' extended hospitalization. *Id.* at 8.

Plaintiffs then initiated suit and asserted the following causes of action: (1) defective design, sounding in negligence and strict liability; (2) failure to warn, sounding only in strict liability; and (3) loss of consortium. *See id.* at 12–21.

Pursuant to the Court's Scheduling Order, Plaintiffs were to disclose expert testimony to Defendants no later than December 3, 2020. *See* Dkt. 20 at 2. On January 6, 2021, Plaintiffs filed the Motion for Leave (Dkt. 32), wherein, pursuant to Federal Rule of Civil Procedure 16(b), they seek an extension of their deadline to disclose expert testimony. Though the Motion for Leave was filed one month after the deadline had passed, its Certificate of Conference represents that on December 16, 2020, two weeks after the deadline had passed, Plaintiffs' counsel contacted Defendants' counsel twice about an extension. *See id.* at 7. Plaintiffs represent Defendants opposed Plaintiffs' request. *See id.* The Certificate of Conference further represents that on December 17 and 18, 2020, Plaintiffs' counsel called Defendants' counsel on three separate occasions to request a time to discuss the matter further, and Defendants' counsel never returned the phone calls. *See id.*

On the same day Plaintiffs' counsel first contacted Defendants' counsel regarding an extension of their expert disclosure deadline, Defendants filed the MSJ (Dkt. 31).

Defendants filed a response to the Motion for Leave, and Plaintiffs filed a response to the MSJ. *See* Dkts. 33, 36. On March 3, 2021, the Court held a hearing to discuss the Motion for Leave, the MSJ, and other pending matters. *See* Dkt. 45.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard "requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003) (internal quotations omitted). To determine whether good cause exists, a court considers four factors: (1) the explanation for the failure to disclose; (2) the importance of the evidence; (3) the potential prejudice to the non-movant; and (4) the possibility of curing such prejudice by granting a continuance. *See id.* at 536; *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 467 (E.D. Tex. 2020).

## III.     ANALYSIS

### A.  MOTION FOR LEAVE

In the Motion for Leave, Plaintiffs argue: (1) failure to timely designate expert witnesses was inadvertent; (2) expert testimony is crucial to proving Plaintiffs' case; (3) Defendants have not been prejudiced; and (4) any prejudice may be cured by a continuance. Dkt. 32 at 2–3. In response, Defendants argue that Plaintiffs' untimeliness due to inadvertence does not justify the missed deadline, the importance of Plaintiffs' experts is impossible to determine, allowing late disclosures would prejudice Defendants, and a continuance cannot cure Defendants' prejudice. Dkt. 36 at 9.

### 1. Plaintiffs' Explanation for Failure to Disclose

"In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule." *Hirth v. Metropolitan Life Ins. Co.*, No. 5:04-cv-53, 2005 WL 8161107, at *1 (E.D. Tex. June 29, 2005). A "party's explanation for seeking relief from the schedul[ing order] must demonstrate that it could not have met the deadline despite its diligence." *Id.* at *1. "Mere inadvertence, however, is weak justification for failure to disclose experts in a timely fashion." *Mattingly v. Home Depot U.S.A., Inc.*, No. 1:08-cv-341, 2009 WL 10676774, at *2 (E.D. Tex. May 19, 2006). Here, Plaintiffs explain the delay was caused by staff turnover and issues with calendar access:

> After the attorney who was personally responsible for litigation of the above-styled case left the law firm, I was unaware of the December 3, 2020 deadline for expert disclosures. I discovered later that the deadline was on the attorney's private calendar but not on a public calendar to which I had immediate access. Because of these circumstances, the firm inadvertently missed the deadline for expert disclosures.

Dkt. 32-1 at 2 (Declaration of Darren P. McDowell, counsel for Plaintiffs) (numbered paragraphs removed). Based on this explanation, Plaintiffs' delay amounts to "mere inadvertence." *Mattingly*, 2009 WL 10676774, at *2. The Court acknowledges, though, that Plaintiffs appear to have acted promptly and in good faith to correct their mistake. To be sure, the Motion for Leave was filed a month after the expert disclosure deadline had passed. *See* Dkts. 20, 32. However, the record shows Plaintiffs' counsel disclosed the inadvertent error to Defendants' counsel and requested an extension on December 16, 2020, two weeks after Plaintiffs missed their deadline. *See* Dkt. 32 at 7.

Defendants opposed the extension. *See id.* But Defendants, presented with the admission of error by Plaintiffs' counsel, also perceived the potential for a non-substantive, procedural victory against Plaintiffs Janet and Randy Adams. The very same day Plaintiffs took responsibility

4

for the mistake, Defendants filed the MSJ on one issue and one issue alone: Plaintiffs' failure to timely name an expert witness. *See* Dkt. 31. Notably, Defendants did not file a motion for summary judgment in the days following the expiration of Plaintiffs' expert disclosure deadline, but only did so after Plaintiffs' counsel's admittance of error due to a failure of firm logistics in the wake of a departing attorney.

After receiving service of the MSJ, Plaintiffs' counsel promptly contacted Defendants' counsel three additional times on December 17 and 18, 2020, to discuss the matter further. *See* Dkt. 32 at 7. Plaintiffs represent Defendants returned none of these calls. *See id.* Thus, Plaintiffs were unable to even attempt to resolve the expert disclosure issue or the related MSJ with Defendants' counsel. Forced to act, Plaintiffs timely responded to the MSJ. *See* Dkts. 31, 33; LOCAL RULE CV-7(e). On the same day, Plaintiffs filed the Motion for Leave. *See* Dkts. 32, 33.

The record reflects Plaintiffs inadvertently missed their deadline to disclose expert testimony due to staff turnover and calendar issues. These are not strong reasons for missing a court-ordered deadline. However, Plaintiffs quickly discovered the error and promptly reached out to Defendants' counsel to take responsibility and confer so as to not waste time or create additional prejudice. This was a professional correction to a professional error.

Defendants did not respond in kind. Defendants pounced on the opportunity presented by Plaintiffs' mistake by filing the MSJ, and then evidently would not speak to Plaintiffs' counsel on the phone. Pursuant to the Local Rules of the Eastern District of Texas, the Court expects counsel to cooperate with one another, which includes returning phone calls. *See* LOCAL RULE AT-3(c), (e) ("A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves. . . . Lawyers should treat each other, the opposing party, [and others] with courtesy

and civility and conduct themselves in a professional manner at all times."). Faced with a professional error, Defendants made their own professional error in failing to engage with Plaintiffs, even after filing the MSJ.

Defendants were within their right to file a motion for summary judgment based on failure to timely disclose an expert. Fundamentally, the issue is, however, that the MSJ is not based on any principle of justice as it relates to the parties—this is more in the nature of a clerical mistake by attorneys who gained no strategical advantage as a result of their error. Defendants' counsel's denial of reasonable communication with opposing counsel is indicative of a breakdown in the litigation process. *See Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 288 (N.D. Tex. 1988) ("Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them.), *adopted by*, LOCAL RULE AT-3.

Attorney mistakes happen, and this appears to be a first in this matter rather than part of a pattern of delay or lack of diligence. Ultimately, even if Court intervention is required, refusal to confer and attempt to resolve disputes wastes both the parties and the Court's time and resources. The Court cautions the parties to not let this behavior escalate in future disputes during this litigation.

Considering that Plaintiffs' counsel promptly attempted to take responsibility and resolve the mere two-week delay after learning of their error, the Court finds Plaintiffs' explanation for failure to timely disclose its expert weighs only slightly against granting an extension.

### 2. Importance of the Expert Testimony

The more important the witness, the more this factor weighs in favor of allowing late expert designation. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707–08 (5th Cir. 2007); *cf. Nevels v. Fort Motor Co.*, 439 F.2d 251, 256–57 (5th Cir. 1971) ("The ultimate end of all litigation is the ascertainment and rendition of truth."). Here, the parties do not dispute expert testimony is critical to Plaintiffs' lawsuit. *See* Dkt. 31 at 9 ("Simply put, Plaintiffs cannot establish the requisite elements for a design defect claim . . . without expert evidence."); Dkt. 32 at 2 ("[E]xpert testimony is crucial to Plaintiffs in proving their claims."); *Sims. v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (stating, under Texas law, "expert testimony is generally encouraged if not required to establish a products liability claim."). Accordingly, this factor strongly weighs in favor of granting an extension. *See Mattingly*, 2009 WL 10676774, at *3.

### 3. Potential Prejudice to Defendants

In the context of delayed expert disclosure, courts evaluate prejudice in terms of the disclosure's timing, not the content. *See Klein v. Federal Ins. Co.*, Nos. 7:03-cv-102-D, 7:09-cv-94-D, 2015 WL 1525109, at *4 (N.D. Tex. Apr. 6, 2015). "If prejudice could be demonstrated based on the *content* of the disclosure, a party could always show prejudice when required to rebut new evidence. . . . The *timing* of the disclosure results in prejudice when, for instance, the opposing party must incur unreasonable additional costs that could have been avoided by an earlier disclosure, or the party is precluded under the scheduling order from developing and presenting rebuttal evidence." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (emphasis original).

Here, Defendants would not experience significant prejudice if the deadline was extended. This matter is in the early stages of litigation, and neither the discovery deadline nor the deadline

7

for dispositive motions has passed. *See* Dkt. 20; *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, No. 4:18-cv-735-KPJ, 2020 WL 7646742, at *2–3 (E.D. Tex. Dec. 23, 2020) (finding prejudice where party disclosed expert after discovery had closed and dispositive motion deadline had passed). Thus, this is not a case of "one party ambushing the other with undisclosed expert opinions at trial," thereby gaining an unfair advantage. *C.F. Bean*, 841 F.3d at 373; *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (affirming finding of prejudice where non-movant had already developed trial strategy and designated witnesses on basis that movant had no expert testimony). Defendants are fully able to prepare rebuttal evidence if the Court extends Plaintiffs' expert disclosure deadline. *See Broxterman v. State Farm Lloyds*, No. 4:14-cv-661-ALM, 2015 WL 11072132, at *3 (E.D. Tex. Oct. 19, 2015) (finding no prejudice where non-movant had adequate opportunity to rebut expert testimony).

  Moreover, any additional costs incurred from an extension would not be unreasonable. Here, Plaintiffs seek an extension so they can offer an expert witness for their products liability claims. *See* Dkt. 32. Defendants have been aware of these claims since this case's inception. *See* Dkt. 1. Because expert witnesses are crucial for Plaintiffs' *prima facie* case, *see Sims*, 839 F.3d at 409, Defendants have known they would need to prepare rebuttal evidence since this case began on October 14, 2019. *See* Dkt. 1. These facts to not present an instance in which a party adds an additional claim, or introduces an eleventh-hour witness, to foist additional litigation costs without warning. *See S&W Enters.*, 315 F.3d at 536–37 (affirming finding of prejudice where new expert would testify in support of a new cause of action, thereby increasing the defendants' costs unexpectedly); *Fahim v. Mariott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (affirming finding of prejudice where non-movant would have been forced to defend a new claim late in the litigation); *Klein*, 2015 WL 1525109, at *4 (finding no prejudice where costs incurred would

"largely [be] the same"); *cf. F & S Offshore, Inc. v. K O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir. 1981) (noting, in the context of Federal Rule of Evidence 403, a previously unidentified expert witness disclosed shortly before trial and raising completely new issues could amount to unfair surprise).

In light of the record, the Court finds Defendants will not be prejudiced in terms of time and costs. This factor weighs in favor of granting Plaintiffs' Motion.

### 4. Possibility of Continuance to Cure Prejudice, If Any Exists

In the Fifth Circuit, a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998). The need for a continuance should be balanced against a trial court's need to control its docket. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004). "Although the Fifth Circuit has urged district courts to view continuances with favor as a cure for late-designated witnesses, a court should not condone dilatory conduct by routinely extending the deadline to designate expert witnesses." *Broxterman v. State Farm Lloyds*, No. 4:14-cv-661-ALM, 2015 WL 11072132, at *4 (E.D. Tex. Oct. 19, 2015).

Because this is Plaintiffs' first motion seeking an extension, Plaintiffs have not engaged in routinely dilatory behavior. Additionally, a continuance would not unnecessarily delay trial or significantly disrupt the progression of this case. *S&W Enterprises*, 315 F.3d at 537. This factor weighs in favor of granting an extension.

Thus, three of the four factors weigh in favor of granting an extension. The Court finds Plaintiffs' Motion for Leave should be granted.

## B.  MOTION FOR SUMMARY JUDGMENT

Defendants' MSJ rests on one argument: Plaintiffs' failure to disclose a single expert witness entitles Defendants to summary judgment on all of Plaintiffs' claims. *See* Dkt. 31 at 6. At the Hearing, the Court asked Defendants whether, in the event of an extension, Defendants' MSJ would be mooted. *See* Dkt. 45. Defendants responded in the affirmative. *Id.*

Because Defendants' MSJ is premised solely on the non-disclosure of expert witnesses and will be mooted if the Court grants the Motion for Leave, the Court finds the MSJ is denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Motion for Leave and Modification (Dkt. 32) is hereby **GRANTED** and the MSJ (Dkt. 31) is hereby **DENIED AS MOOT**.

**So ORDERED and SIGNED this 12th day of March, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE