IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANET ADAMS and RANDY ADAMS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-870-SDJ-KPJ |
| MEDTRONIC, INC., *et al.*, | § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER**

On November 3, 2023, Defendants Medtronic, Inc., Covidien Holding, Inc., Covidien LP, and Covidien Sales LLC's ("Defendants") counsel emailed chambers, copying Plaintiffs Janet Adams and Randy Adams's ("Plaintiffs") counsel, requesting guidance on how the parties should proceed regarding a discovery issue—a disagreement on the designation of a document (the "Document") produced during discovery and Defendants' attempt to claw back the Document from production. On November 7, 2023, the Court issued an order scheduling a hearing regarding the discovery issue and directing the parties to file a joint letter brief detailing the discovery issue and including the Document for *in camera* review. Dkt. 117 at 2.

On November 9, 2023, the parties filed the Joint Letter to Court for November 13, 2023, Hearing (the "First Joint Letter") (Dkt. 125). In the First Joint Letter (Dkt. 125), Defendants argue that the Document is (1) confidential and thus, subject to the Protective Order (Dkt. 22), and Plaintiffs did not follow the procedures detailed therein; (2) not responsive to discovery because the Court limited discovery to the "EEA (circular) stapler" at issue in this case; (3) not relevant because it concerns different products and a different operations facility than those at issue in this case; and (4) protected by work product privilege. Dkt. 125 at 1–2. Plaintiffs responded that the

1

Document is (1) not confidential and therefore, not subject to the Protective Order (Dkt. 22); (2) responsive to this case because it shows a systemwide failure in the company's standard operating procedures to comply with regulations; (3) relevant to this case for the same reason as it is responsive—it shows a systemwide failure to comply with regulations; and (4) not protected by privilege because "simply collecting a document" does not entitle the Document to be protected by work product privilege. Dkt. 125 at 3–5.

On November 13, 2023, the Court held a hearing regarding the discovery issue. *See* Dkt. 117; Minute Entry for November 13, 2023. After hearing argument from the parties and acting under the assumption that the Document was properly designated as confidential, the Court issued an Order (Dkt. 126) setting deadlines regarding Plaintiffs' delivery of Confidentiality Agreements for each of their experts to Defendants pursuant to Paragraph 9 of the Protective Order (Dkt. 22) and entering a stay regarding Defendants' deadline to disclose experts. Dkt. 126 at 1–2. The Court further ordered that, to the extent the parties are unable to resolve the objections raised by Defendants in the First Joint Letter (Dkt. 125), the parties shall file a joint letter brief regarding Defendants' objections and Plaintiffs' response. *Id.* at 1. Pursuant to the Order (Dkt. 126), Plaintiffs provided the Confidentiality Agreements for each of their experts and Defendants provided their objections. *See* Dkt. 130. On December 4, 2023, the parties filed the Joint Letter to Court Pursuant to November 28, 2023, Order (the "Second Joint Letter") (Dkt. 130) (together with the First Joint Letter, the "Joint Letters") (Dkts. 125; 130), notifying the Court that the parties were unable to resolve the objections raised by Defendants and addressing such objections. Dkt. 130.

In the Second Joint Letter (Dkt. 130), Defendants raised two objections: (1) Defendants object "to all of Plaintiffs' experts receiving, considering, and relying on the confidential [Document]" because the Document is (a) "not responsive to discovery," (b) "not relevant," and

2

(c) "subject to work product considerations"; and (2) Defendants object to "Plaintiffs providing <u>any</u> documents marked as Confidential to their retained expert, Dr. Jason Moore." Dkt. 130 at 3–4 (emphasis in original). Plaintiffs responded to Defendants' objections by asserting that: (1) "the [Document] in question is highly relevant to the present case"; and (2) Defendants' argument regarding Dr. Moore "lacks a factual basis supporting the notion that disclosure of confidential Medtronic documents to Dr. Moore would result in specific prejudice or harm." *Id.* at 2–3. Plaintiffs further requested "relief from the Protective Order's provision allowing a right for Defendants to object to disclosure of protected information to Dr. Moore." *Id.* at 1.

The Court construes the First Joint Letter (Dkt. 125) as Defendants' motion to claw back the Document (the "Motion to Claw Back") (Dkt. 125), wherein Defendants argue that the Document is confidential and privileged and thus subject to claw back. *See* Dkt. 125 at 1–2. The Court construes the Second Joint Letter (Dkt. 130) as Defendants' objections to Plaintiffs' experts pursuant to Paragraph 9 of the Protective Order (Dkt. 22) and Plaintiffs' motion for relief from the Protective Order (Dkt. 22) (the "Motion for Relief") (Dkt. 130). *See* Dkt. 130.

A. **Defendants' Motion to Claw Back**

   1. **Designation of the Document**

First, Defendants argue that the Document is confidential and, thus, subject to the Protective Order (Dkt. 22). Dkt. 125 at 1. Plaintiffs contend that the Document is a public document and, therefore, not subject to the Protective Order (Dkt. 22). *Id.* at 4. The Court agrees with Defendants that the Document is confidential. The Document at issue is an Establishment Inspection Report ("EIR") completed by the United States Food and Drug Administration (the "FDA"). Dkt. 125-1. According to the FDA website, EIRs are shared with the company at the close of an inspection of a regulated facility to determine a company's compliance with applicable

3

laws and regulations. *FDA Form 483 Frequently Asked Questions*, U.S. FOOD & DRUG ADMIN. https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions (last visited Jan. 19, 2024). However, only a segment of the information detailed therein is disclosed to the public. *Inspection Classification Database*, U.S. FOOD & DRUG ADMIN. https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-classification-database (last visited Jan. 19, 2024). Although the full EIR may be requested directly from the FDA, the FDA is required to remove or redact any material that would be considered confidential prior to producing the EIR to the requesting party.

At the hearing, Plaintiffs' counsel argued that the Document is in a form that she believed would be the version, or close to the version, that would be released by the FDA to the public pursuant to a Freedom of Information Act ("FOIA") request based on her experience in reviewing other EIR reports that have been made public. However, Plaintiffs' counsel could not represent that the Document had been released to the public in its current form. Defendants' counsel responded that the Document was contained within Covidien's confidential business papers and her understanding was that the Document would contain significantly more redactions in a version released by the FDA under FOIA.

After reviewing the Document *in camera* and discussing it with counsel at the hearing, there is no indication that the Document produced in this case is a publicly disclosed EIR. The Document includes only one redaction. Dkt. 125-1 at 6. Some of the information in the Document could constitute trade secrets or other confidential information that is customarily kept private or closely held. *See generally id.* Therefore, the Court will assume that the Document is confidential for the purpose of the present litigation. Thus, the Document is subject to the Protective Order

4

(Dkt. 22) and the provisions contained therein regarding the disclosure and use of confidential information for purposes of preparation, trial, and appeal of this action. *See* Dkt. 22 ¶¶ 6–11.

### 2. Defendants' Attempted Claw Back of the Document

Defendants raise two arguments to justify their attempt to claw back the Document: (1) the Document is non-responsive and not relevant; and (2) the Document is subject to work-product privilege. Dkt. 125 at 1–2.

Federal Rule of Evidence 502 applies to the disclosure of a communication or information covered by the attorney-client or work-product privilege. Generally, Federal Rule of Evidence 502(b)(3) and Federal Rule of Civil Procedure 26(b)(5)(B) govern a party's attempt to claw back inadvertently disclosed communications or information. Under Federal Rule of Evidence 502(b)(3), "disclosure does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Federal Rule of Civil Procedure 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

"However, parties may enter into 'claw-back' arrangements that differ from the procedure provided by Rule 26(b)(5)(B)." *Moser as Tr. of Tr. Under the Amended Joint Plan of Liquidation of Tango Transp., LLC v. Navistar Int'l Corp.*, No. 17-cv-598, 2019 WL 430912, at *2 (E.D. Tex. Feb. 4, 2019) (citing FED. R. EVID. 502 advisory committee's notes to 2006 amendment).

5

"Additionally, courts may enter orders governing inadvertent disclosures that replace the procedures of Rule 26(b)(5)(B)." *Id.* The incorporation of the parties' agreement in a court order can reduce the burden of asserting and proving inadvertence under Rule 502(b). *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Cmt. 10.c., 150 (2018); *see also* FED. R. EVID. 502 advisory committee's notes to 2011 amendments (listing a non-exclusive set of reasonable steps that may be considered by a court when deciding whether the production was inadvertent including: the reasonableness of precautions taken; the time to rectify the error; the scope of discovery; the extent of disclosure; the overriding issue of fairness; the number of documents to be reviewed; the time constraints for production; the use of advanced analytical software applications and linguistic tools; and the implementation of an efficient system of records management). "Pursuant to Rule 502(d), the incorporation of the agreement in a court order ensures that nonwaiver provisions apply in all other federal and state proceedings." *Id.*; *see* FED. R. EVID. 502(d).

In this case, the Court entered the Scheduling Order (Dkt. 20), which includes the following procedure governing inadvertent disclosure:

> 502(d) Inadvertent Disclosure. Pursuant to FED. R. EVID. 502(d), a party's inadvertent disclosure or production of any documents or information in this proceeding shall not, for the purposes of this proceeding or any other proceeding in any other court, constitute a waiver by that party of any privilege or protection applicable to those documents, including the attorney-client privilege, work product protection, and any other privilege or protection recognized by law. The provisions of Fed. R. Evid. 502(b) are inapplicable to the production of documents or information under this Order. Specifically, there has been no waiver if a party discloses privileged or protected information inadvertently or otherwise regardless of whether the party took reasonable steps to prevent the disclosure or to rectify the error.

Dkt. 20 at 4. To invoke the claw back provision detailed in the Scheduling Order (Dkt. 20), the

threshold requirement is that the communication or information is subject to attorney-client privilege, work product protection, or any other privilege or protection recognized by law. *See Navistar Int'l Corp.*, 2019 WL 430912, at *4; *Zapmedia Servs., Inc. v. Apple Inc.*, No. 08-cv-104, 2010 WL 5140672, at *1 (E.D. Tex. Sept. 24, 2010).

Defendants first argue that they "properly clawed back the [Document] because it is not responsive or relevant." Dkt. 125 at 1. However, Defendants have not referenced any authority, nor has the Court found any authority, to support their proposition that responsiveness and relevance are proper bases upon which an inadvertently disclosed document can be clawed back. In fact, both Rule 502(b)(3) and Rule 26(b)(5)(B) specifically apply to privileged communications or information. *See* FED. R. EVID. 502(b)(3); FED. R. CIV. P. 26(b)(5)(B); *see also The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 10.d., 151 (2018) ("Rule 502 is not a panacea; its protections are limited in scope and effect."). Further, the parties have not provided the Court with any agreement between the parties that expands the ability to claw back documents because of responsiveness or relevancy. Thus, Defendants' first argument cannot support their attempt to claw back the Document.

Nevertheless, the Court will address the issue of the Document's responsiveness and relevance to resolve the disagreement between the parties. Defendants argue that the Document is non-responsive and not relevant to this case because the Document is not related to the products at issue in this case. Dkt. 125 at 1. Specifically, Defendants contend that the Court limited discovery in this case to "all sizes of the EEA (circular) stapler at issue." *Id.* Defendants contend that the Document concerns a different type of stapler at a different production facility than the stapler and production facility at issue in this case. *Id.* Plaintiffs argue that the Document is responsive and relevant because "a central finding [in the inspection] was that Defendant's [sic]

7

failed to adequately investigate complaints about device failures and found that the company's [Standard Operating Procedures] *on a Divisional level*, was [sic] inadequate." *Id.* at 4 (emphasis in original). Based on this finding, Plaintiffs conclude that the Document is "clear evidence that Defendants were not routinely complying with all provisions of the FDA's regulations." *Id.*

To evaluate the discoverability of the Document, the Court looks to Federal Rule of Civil Procedure 26(b)(1) which states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). The Document is relevant to Plaintiffs' claims. In the Third Amended Complaint (Dkt. 82), Plaintiffs allege that "Defendants investigations into device malfunctions are slow and too late for most patients" and Defendants' quality control procedures failed to detect errant manufacturing steps leading to a defect, among others. Dkt. 82 at 14, 17. The Document, which Plaintiffs assert shows deficiencies in Defendants' complaint investigation and standard operating procedures, is certainly relevant to Plaintiffs' claims. *See id.*; Dkt. 125 at 4. Accordingly, the Document is discoverable. Thus, the Court turns to Defendants' second argument: work product privilege.

Defendants also argue that the Document is protected by work product privilege. Dkt. 125 at 2. The work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." FED. R. CIV. P. 26(b)(3)(A). "[T]he

8

work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *United States v. El Paso Co.*, 682 F.2d 530, 543 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984)). Like the attorney-client privilege, "[t]he burden of establishing that a document is work product is on the party who asserts the claim." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

The Document is a report prepared by the FDA. Dkt. 125-1. There is no indication that the Document was completed in anticipation of litigation; rather, as discussed above, EIRs are completed by the FDA at the close of an investigation of a regulated facility. *See supra* Section A.1. There is nothing in the Document indicating that it contains legal theories, mental impression, notes, etc., of Defendants' counsel, nor have Defendants made any argument to this effect. Nevertheless, Defendants argue that the Document is covered by work product privilege because "it was inadvertently produced based on counsel's fact gathering process during the course of discovery." Dkt. 125 at 2.

To support their contention that the collection of documents in preparation for trial is protected by work product privilege, Defendants cite to *Hickman v. Taylor*, 329 U.S. 495 (1947). Defendants cite this case for the proposition that it is necessary for counsel to be free from "undue and needless interference" when preparing for litigation. *See* Dkt. 125 at 2 ("The . . . underpinning [of the] work product [doctrine] is for a lawyer, in preparing the client's case, to assemble information, sift through what the lawyer considers to be relevant facts, prepare legal theories and plan strategy, without undue and needless interference." (citing *Hickman*, 329 U.S. at 510–511)). The full context of *Hickman* is as follows:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–511 (internal citation omitted). The *Hickman* Court did not intend that any document collected in anticipation of litigation be protected from discovery by work product privilege. Rather, it is the lawyer's strategy and legal theories as reflected in documents the lawyer deems relevant to collect that may be protected by the work product privilege. *See id.*; *see also Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (holding that counsel's compilation of select documents in preparation for a deposition is work product because "in selecting the documents he thought relevant to [his client's] deposition, defense counsel engaged in proper and necessary preparation of his client's cases"); *but see Thomas v. Gen. Motors Corp.*, 174 F.R.D. 386, 388 (E.D. Tex. 1997) (finding that an index detailing all of the documents produced did not reveal counsel's selection process). Therefore, *Hickman* does not support Defendants' contention. The Document does not contain mental impressions or legal theories of Defendants' counsel. Nor does the production of the Document reveal the selection process used by Defendants' counsel, and thereby, does not

10

reveal their mental impressions or legal opinions. Rather, the Document was produced as part of the general discovery process in this case. Thus, Defendants have not met their burden to establish that the Document should be protected by the work product privilege. Because the Document is not privileged, it is not subject to claw back pursuant to Federal Rule of Evidence 502 and the provision for inadvertent disclosures in the Scheduling Order (Dkt. 20).

**B.     Defendants' Objections to Plaintiffs' Experts**

In response to the delivery of the Confidentiality Agreements for each of Plaintiffs' experts, Defendants object to (1) all of Plaintiffs' experts receiving, considering, and relying on the Document because it is not responsive, not relevant, and subject to work product privilege, and (2) Plaintiffs providing any documents marked confidential to their expert Dr. Jason Moore ("Dr. Moore"). Dkt. 130 at 3–4. Defendants' first objection is overruled because the Document is responsive, relevant, and not subject to work product privilege. *See supra* Section A.2.

Defendants also object specifically to Dr. Moore receiving any documents marked confidential because (1) Dr. Moore has ties to Covidien's competitors, and (2) Dr. Moore is himself a direct competitor of Covidien. Dkt. 130 at 4. First, Defendants argue that Dr. Moore's curriculum vitae ("CV") indicates that he has at least fifteen years of experience relating to the design of medical devices and has been a medical device expert since January 2021. *Id.* Defendants further argue that Dr. Moore's CV does not provide a list of all other cases in which he has testified as an expert witness during the previous four years as required by FED. R. CIV. P. 26(a)(2)(B)(v). *Id.* Defendants acknowledge that Plaintiffs have represented by email that their experts have no additional consulting experience. *Id.* Nevertheless, Defendants represent that they remain concerned that Dr. Moore has performed expert work for one or more competitors. *Id.* Defendants argue that allowing Dr. Moore to view the confidential documents will put Defendants "at a severe

11

competitive disadvantage." *Id.* Second, Defendants argue that Dr. Moore is a direct competitor himself because he is the CTO and co-owner of Medulate LLC, a company that designs and manufactures medical products of the same types of products designed and manufactured by Defendants. *Id.*

Plaintiffs respond that Paragraph 9 of the Protective Order requires that objections to a proposed expert be made for good cause and that Defendants objection cannot be made for good cause because Dr. Moore has already received these documents from productions in two other cases—*Lumaghi* and *Hunt*. *Id.* at 1. Plaintiffs further argue that "Defendants have identified no facts that support it will suffer harm or prejudice when Dr. Moore receives a confidential document he has already received[] but has simply been bates stamped with a different Plaintiff's name." *Id.* at 1.

> Paragraph 9 of the Protective Order states:
>
> Further, prior to disclosing Confidential Information or confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. **The objection must be made for good cause and in writing, stating with particularity the reasons for the objection.** Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may apply to the presiding judge to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

Dkt. 22 ¶ 9 (emphasis added). Within the context of a protective order, the good cause standard requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United*

*States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Moreover, the harm must be significant, not a mere trifle." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986) (citation omitted).

Defendants have failed to meet their burden in objecting to Dr. Moore as an expert under the Protective Order (Dkt. 22). Defendants argue they will suffer competitive harm because Dr. Moore is the CTO and co-owner of a company that designs and manufactures medical products similar to Defendants' products. Dkt. 130 at 4. Defendants do not make any further demonstration of facts in support of this conclusory contention. Thus, Defendants have failed to demonstrate with particular and specific facts how the disclosure of the documents will result in significant harm.[1] Moreover, as Plaintiffs argue, Dr. Moore has already accessed these documents in a different case and thus, has already learned of their contents. *See id.* at 1. Because Dr. Moore has already learned the contents of the confidential documents in this litigation, the competitive harm, if any, is already done.

Although not referenced by either of the parties, Paragraph 11 of the Protective Order (Dkt. 22) further supports the disclosure of confidential documents to Dr. Moore. Dkt. 22 ¶ 11. Paragraph 11 of the Protective Order (Dkt. 22) states:

> Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:
>
> (a) the information was previously received or authored by the person or was authored or received by a director, officer, employee or agent of the company for which the person is testifying as a designee under FED. R. CIV. P. 30(b)(6) . . . .

---

[1] Defendants' arguments are largely frivolous and appear to be made for an improper purpose. *See* FED. R. CIV. P. 11 (prohibiting filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; requiring "legal contentions" to be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"). If Defendants wish to bring future objections, the Court expects their position to be accompanied by a legal argument—made after a reasonable inquiry—that is supported by both law and fact.

*Id.* As Plaintiffs have informed the Court, Dr. Moore previously received the confidential documents produced in this case in two previous litigations—*Lumaghi* and *Hunt*. Dkt. 130 at 1–2. Plaintiffs informed the Court that the confidential documents are "identical [in] nature . . . , differing only in the Bates stamping" to documents Dr. Moore received in the *Lumaghi* litigation. *Id.* at 1. Plaintiffs represent that Defendants did not object to Dr. Moore receiving the confidential documents in the *Hunt* litigation. *Id.* at 2. Plaintiffs further represent that Dr. Moore prepared an expert report in the *Hunt* litigation based on his review of the confidential documents. *Id.* Because the confidential documents at issue here were previously received and reviewed by Dr Moore in *Lumaghi* and *Hunt*, Paragraph 11 of the Protective Order (Dkt. 22) permits disclosure of the documents to Dr. Moore based on his previous receipt of the documents. Thus, absent a showing of good cause and considering that the confidential documents were previously disclosed to Dr. Moore, the Court overrules Defendants' second objection.

C.    **Plaintiffs' Motion for Relief**

Plaintiffs request relief and "seek a fact-specific petition for modification of the Protective Order" to allow "Dr. Moore to receive identical *Lumaghi* confidential documents." Dkt. 130 at 1. Defendants did not provide an argument related to Plaintiffs' requested relief.

In support of their request for relief from the Protective Order (Dkt. 22), Plaintiffs cite to *Bell ex rel. Bell v. Chrysler Corp.*, No. 99-cv-0139, 2002 WL 172643, at *1 (N.D. Tex. Feb. 1, 2002). In *Bell*, Plaintiff's counsel sought relief from the protective order so that discovery acquired in the *Bell* case could be utilized in a different case involving the same alleged product defect. *Id. Bell* is inapposite here. The Protective Order (Dkt. 22) prevents confidential documents produced in this case from being used for purposes other than litigating the instant case. *See* Dkt. 22 ¶ 6. Plaintiffs seek to use documents from a parallel case in the instant case. The Protective Order (Dkt.

22) does not preclude Plaintiffs from doing so. If the documents obtained in the other case are subject to a protective order, then Plaintiffs should seek relief from the court that entered such protective order. *See Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 947 (N.D. Tex. 2017) (denying the party's request to modify or terminate a protective order entered by another court when no effort was made to file a motion with the entering court to modify or terminate its order). Thus, the relief Plaintiffs request is not appropriate for the Court to grant at this time.

Further, the Protective Order (Dkt. 22) allows the party receiving information marked as Confidential to be used for purposes of preparation, trial, and appeal of this action. Dkt. 22 ¶ 6. Thus, having found above that there is not good cause to exclude Dr. Moore from receiving the confidential documents in this case, *see supra* Section B, Plaintiffs may disclose the information to Dr. Moore within the confines of the Protective Order (Dkt. 22) and use it for this litigation. Plaintiffs may not, however, use the Document obtained in the discovery of this case for any other litigation or other purpose.

**D.     Conclusion**

For the foregoing reasons, the Motion to Claw Back (Dkt. 125) and the Motion for Relief (Dkt. 130) are **DENIED**.

**IT IS ORDERED** that the Document is not subject to claw back pursuant to Federal Rule of Evidence 502 and the provision for inadvertent disclosures in the Scheduling Order (Dkt. 20) and is properly produced as confidential under the Protective Order (Dkt. 22).

The Court further **OVERRULES** Defendants' objections to Plaintiffs' experts.

**So ORDERED and SIGNED this 23rd day of January, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE